UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NELSON PAGE,

        Petitioner,

                                      CASE NO. 05-CV-74917-DT
     v.                               JUDGE ARTHUR J. TARNOW
                                    MAGISTRATE JUDGE PAUL KOMIVES

BLAINE LAFLER.

        Respondent,

_____/


REPORT AND RECOMMENDATION


*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.    *Claim I: Competency* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     F:     *Claim III: Lack of Written Plea Agreement* . . . . . . . . . . . . . . . . . . . . . . . . 14
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     G.    *Claim IV: Failure to Grant a Ginther Hearing* . . . . . . . . . . . . . . . . . . . . . . 18
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . 20

I.      <u>RECOMMENDATION:</u> The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Nelson Page is a state prisoner, currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan.

2.      Petitioner was originally charged with felony murder, two counts of assault with intent to rob while armed, and felony firearm.  On September 9, 2002, petitioner pled guilty to one count of second degree murder and one count of felony-firearm.  On September 24, 2002, he was sentenced by Wayne Circuit Court  Judge Bruce Morrow to 35-72 years' imprisonment.

3.      Petitioner requested the appointment of appellate counsel on October 11, 2002.  On September 23, 2003, a post sentence motion was filed to withdraw the plea.  Among other claims, petitioner alleged that he was not competent to enter his guilty plea.  Hearings on this motion began on October 3, 2003.   The trial court ordered that petitioner be evaluated for his ability to competently plead guilty.  After the forensic evaluation ordered by the court found that petitioner was competent, petitioner sought and received permission to seek an independent competency evaluation.  On March 19, 2004, the trial court denied petitioner's motion to withdraw his plea.

4.      Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals.  Petitioner challenged his imprisonment on the following ground:

IT WAS ERRONEOUS FOR THE CIRCUIT COURT TO DENY DEFENDANT'S MOTION TO WITHDRAW THE GUILTY PLEA WHERE THE CONSTITUTION REQUIRES THAT SUCH A PLEA BE VOLUNTARY, KNOWING, AND INTELLIGENT.

The Court of Appeals rejected petitioner's claim "for lack of merit in the grounds presented." *People v. Page*, No. 254958, (Mich. Ct. App. June 10, 2004). Petitioner then sought leave to appeal this issue to the Michigan Supreme Court. On December 29, 2004 the Supreme Court denied petitioner's application for leave to appeal by standard order. See *People v. Christy*, No. 126564, (Mich. 2004).

5.      On December 29, 2005, petitioner filed an application for the writ of habeas corpus in this Court, raising the same claim as previously made to the Michigan Court of Appeals and the Michigan Supreme Court.

6.      Respondent filed his answer on June 6, 2006. He contends that petitioner's claims are without merit, that the transcript of the plea hearing shows that petitioner voluntarily, knowingly, and intelligently decided to plead guilty, and that petitioner has not shown that the state court unreasonably applied clearly established Supreme Court law.

B.      *Factual Background*

Petitioner's conviction arose from the shooting and murder of Michael Staunton on September 10, 2001, in Detroit. According to Michael Pemberton, petitioner and two other men approached Staunton who was repairing a pay phone with his partner, Pemberton; one of the men asked Staunton and Pemberton if they were police officers. Then one of the men told Staunton and Pemberton that if they got into their car, "they were going to cap their assess." Pemberton identified petitioner as one of men and as the man who was holding the rifle. Petitioner came as close as fifteen to twenty feet away from Pemberton, but Pemberton made it into the car without being shot. Staunton was shot before he made it to the car.

After being arrested, petitioner waived his right to remain silent and then reported that he had

planned to commit a robbery with the other men, but denied that he was the man with the gun.
Petitioner was charged with first degree murder and felony-firearm.  On September 9, 2002, the day
set for trial, with the jury selected, unbeknownst to petitioner's counsel, petitioner decided to accept
the plea bargain that his counsel thought petitioner had turned down.  According to the transcript,
the trial court asked Petitioner if this was accurate:

| THE COURT: | You don't want to take the plea; is that right young man?  Is that correct young man? |
|---|---|
| DEFENDANT: | I'm a take the plea.  I'm gonna take the plea. |
| THE COURT: | I'm sorry? |
| DEFENDANT: | I'm gonna take it. |
| THE COURT: | You don't want to take it? |
| DEFENDANT: | I'm gonna take it. |
| (Pause) | |
| THE COURT: | I'm sorry, Mr. Page.  You said what?   That you want to accept the plea? |
| DEFENDANT: | Yeah. |
| THE COURT: | Are you sure that's what you want to do? |
| DEFENDANT: | Yes. |
| THE COURT: | Okay.  Because your lawyer had told me that you wanted to still go to trial, but instead of that you decided to change your mind? |
| DEFENDANT: | (No verbal response) |
| THE COURT: | Sorry? |
| DEFENDANT: | (No verbal response) |
| THE COURT: | Yes?  No? |
| DEFENDANT: | Yes. |

Jury Trial Tr., dated 6/12/06, at 3-4.

Thereupon, the Court placed petitioner under oath. *See id*. at 4.  The court informed
petitioner of the charges and penalty he faced under the original charge and then stated that the plea
bargain required a thirty-three year sentence for the second-degree murder conviction plus two years
for the felony-firearm charge.  *See id.* at 5.  Petitioner indicated that this was his understanding of
the plea agreement.  *See id.*  Petitioner denied that anybody made any other promises to him, or that
anybody forced him to change his mind to enter the guilty plea.  *See id.* at 5-6.  Further, petitioner

acknowledged that he was freely and voluntarily pleading guilty.  *See id*. at 6.  The court went on

to inform petitioner of the rights he would be waving by pleading guilty:

| | |
|---|---|
| THE COURT: | You understand that this jury that you helped picked, they will hear the testimony if that's what you wanted, decided, if the prosecution prove you guilty beyond a reasonable doubt, do you understand that that's their function? |
| DEFENDANT: | Yes. |
| THE COURT: | You understand that witnesses would be called, sir, those witnesses would have a chance to be cross-examined by your lawyer.  If you wanted to and had a defense, you could present a defense.  If you didn't have a defense, still you could take the stand in your own behalf and your silence could not and would not be used against you if you chose not to take the witness stand.  If you went to trial you would have an automatic right to appeal your sentence and your conviction.  By entering this plea of guilty, sir, you're giving up all of those rights as well as your automatic right to appeal this sentence and your conviction.  Do you understand that? |
| DEFENDANT: | I can't – |
| THE COURT: | Okay.  If you were found guilty by either a jury or waiver, if the prosecution agrees to a waiver, you can automatically appeal the verdict and whatever sentence I impose.  By entering a plea of guilty, you can't automatically appeal but you can only appeal by right.  That's the difference.  One is automatic.  The other is that you have to show another legal situation in order to appeal.  You understand that the penalty for second degree murder could be up to life in prison, that this agreement is 33 years plus whatever I set is the max, plus 2 years for the felony firearm and Count 2 and 3 would be dismissed.  Is that your complete understanding of the agreement, Mr. Page? |
| DEFENDANT: | Yes, sir. |

*Id*. at 6-7.

The trial court went on to ascertain the factual basis for the plea.  *See id*. at 8-10.  When

petitioner seemed to deny that he had committed any crime, the court informed him that he could

not plea guilty and still maintain his innocence:

| | |
|---|---|
| THE COURT: | So how can you plea guilty to the crime? |

| | |
|---|---|
| DEFENDANT: | Pleading guilty because I pretty much can see what the outcome gonna be. Considering the – |
| THE COURT: | You can only plead guilty, sir, if you committed a crime. Based on what you said – |
| DEFENDANT: | I mean, I was there. You know what I'm saying. |
| THE COURT: | That's not a crime. Not unless you did something, shared somebody's intent. Agreed to rob somebody with somebody else. |
| DEFENDANT: | We didn't rob nobody, that's the point I'm trying to tell you. |
| THE COURT: | That's exactly what I told you. That you can't plea guilty to something unless you're guilty of something. Based on what you said, you didn't do anything that's criminal. How can you plea guilty? |
| DEFENDANT: | I got out of the car, displayed a handgun, the handgun was fired. The complainant was struck towards the back, so. |
| THE COURT: | Sounds like you've been reading something Mr. Page. |
| DEFENDANT: | That's what you wanted to hear, right? |
| MR. GLENN [petitioner's attorney]: Your Honor. | |
| THE COURT: | Yes. |
| MR. GLENN: | Can I talk to him just for a few – |
| THE COURT: | Sure. |

*See id.* at 11-12.

Petitioner's counsel then talked to petitioner, and then the court asked petitioner what he wanted to do. *See id.* at 12-13. Petitioner then described how he and co-defendant Jeffrey Cato developed a plan in the car to rob the decedent:

| | |
|---|---|
| THE COURT: | So you all talked about it in the car. So you got out the car and what happened? Why did you rob him? |
| DEFENDANT: | Got out the car. We got to talking and we – to tell you the truth, your Honor, I was high. Pulled out the gun and the gun discharged and struck the complainant in the back – |
| THE COURT: | Who discharged the gun? |
| DEFENDANT: | I did. |
| THE COURT: | Being high, it didn't – your finger didn't accidentally go around the trigger did it? Your finger was around that trigger wasn't it? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Did you point the gun in the direction of the man as he was running? |
| DEFENDANT: | Your Honor, you really want me to tell you the truth, he |

|                |                                                                  |
| -------------- | ---------------------------------------------------------------- |
|                | wasn't running.                                                  |
| THE COURT:     | Okay. Well, did you point the gun in his direction? Because       |
|                | it went off and it –                                             |
| DEFENDANT:     | Yes, yes. It wasn't up in the air. It was down –                 |
| THE COURT:     | You intentionally pointed at him, right?                         |
| DEFENDANT:     | Yes.                                                             |
| THE COURT:     | Did you realize by shooting him that you would either cause      |
|                | great bodily harm or death, buy shooting a person with a gun     |
|                | that you can kill, do you realize that?                          |
| DEFENDANT:     | Yes, your Honor.                                                 |

*Id*. at 14-15.

The court accepted the guilty plea, and petitioner was subsequently sentenced in accord with the terms of the plea agreement.

The subsequent procedural history of the case is accurately described in respondent's brief:

> Petitioner was assigned appellate counsel who filed a motion to withdraw the plea. Among other things, the motion alleged that Petitioner was not competent to enter his guilty plea. The trial court ordered that Petitioner be evaluated for his competency to plead guilty. MT 10-3-03. After an evaluation that he was competent, Petitioner sought and received permission for an independent evaluation. MT 1-16-03.
>
> On March 19, 2004, the trial court denied the motion to withdraw. The Court was not convinced by the independent evaluator's opinion as to competency. T 3-19-04, p 19. The court rejected the claim that it coerced a plea. *Id*. at 25. With respect to the claim that the court did not inform Petitioner that he could request a bench trial, it was noted that at the time of the plea Petitioner had already picked a jury for his trial. *Id*. 30.
>
> Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The application raised what now form Petitioner's habeas claims. The Court of Appeals denied leave to appeal "for lack of merit in the grounds presented" by order dated June 10, 2004. *People v. Page*, Mich Ct App No 254958. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims. On December 29, 2004, the application was denied by standard order. *People v. Chirsty*, Mich Sup Ct No 126564.

Respondent's Br., at 11.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Claim I: Competency*

Petitioner contends that he was not competent to enter a guilty plea at the time his plea was taken.  Petitioner underwent two different competency evaluations, one ordered by the court, the other independently conducted after petitioner so requested.  The two experts reached opposite conclusions; the State's expert found petitioner competent at the time of the plea taking, while petitioner's independent expert found his competency questionable.

1.      *Clearly Established Law*

"The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense." *Wolf v. U.S.* 430 F.2d 443, 445 (1970).  In *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam), the Supreme Court developed the test for evaluating a defendant's competency to stand trial: "[I]t is not enough for the district judge to find that 'the defendant (is) oriented to time and place and (has) some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Id*. at 402.  "[U]nder the due process clause a hearing on a defendant's competence to plead guilty is required if the trial judge entertains or should reasonably have entertained a good-faith doubt as to competence of a defendant to understand the nature and consequences of his plea or to participate intelligently in the proceedings, including his ability to make a reasoned choice among alternatives presented to him." *Sailer v. Gunn*, 548 F.2d 271, 275 (9th Cir. 1977); *see also*, *Pate v. Robinson*, 383 U.S. 375, 385-387 (1996) (evidence produced on a defendant's behalf that raises sufficient doubt as to the defendant's competency to stand trial entitles him to a hearing on this issue); *Godinez*

*v. Moran*, 509 U.S. 389, 389, 396-397 (1993) (the competency standard for evaluating one's ability to stand trial is the same as the competency standard for pleading guilty or waiving right to counsel). Further, competency to stand trial is a "factual issue" to be determined by the state court. *See Thompson v. Keohane*, 516, U.S. 99, 111 (1995) (construing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)). A state court's finding that a defendant is competent to stand trial is entitled to a presumption of correctness. *Demosthenes v. Ball*, 495 U.S. 731, 735 (1990) (construing *Maggio*, 462 U.S. at 117). "In performing its fact-finding and credibility functions a [trial] court is free to assign greater weight to the finding of experts produced by the Government than to the opposing opinions of the medical witnesses produced by the defendant." *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991). "Clear error is not demonstrated by pointing to conflicting evidence in the record." *Id*.

After a defendant has raised sufficient doubt as to his competency to stand trial and the State has met the due process requirement of providing access to a competency evaluation, there is "no basis for holding that due process further requires the State to assume the burden of vindicating the defendant's constitutional right by persuading the trier of fact that the defendant is competent to stand trial." *Medina v. California*, 505 U.S. 437, 450 (1992). "[I]t is enough that the State affords the criminal defendant on whose behalf a plea of incompetence is asserted a reasonable opportunity to demonstrate that he is not competent to stand trial." *Id*. at 451. "The burden imposed upon a habeas petitioner to demonstrate incompetency in fact at the time of trial is extremely heavy: Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the Petitioner to meaningfully participate and

cooperate with counsel during a criminal trial..." *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir. 1983). Finally, "[n]othing prevents a defendant from making poor tactical choices, including abruptly pleading guilty in the midst of trial." *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005).

2. *Analysis*

Petitioner claims that when he entered his plea, he was on "psychotropic, mind altering medications and did not understand what he was waiving and agreeing to when he did the plea." Pet'r's Br., at 4. He asserts that the medication that he was on, on the day of the plea taking, " 'threw me off balance' "makes you drowsy" 'dizzy' and "faint" and interfered with his thinking-'I got a thought in my head- but it makes me lose the thought.'" In accord with due process, petitioner was granted a competency hearing when the issue of his competency was raised on appeal.

Although the State's expert did note that petitioner had mental disorders present, the State's expert concluded that petitioner's judgment was "not affected by his mental condition or medications." Further, even though petitioner's own expert diagnosed petitioner as suffering from a mild form of schizophrenia and stated that petitioner "seems exceptionally restricted in terms of his essential capacity to adequately assess the 'true' strength of the prosecution's case against him," petitioner's own expert concluded that petitioner ""has an adequate understanding of the essential roles of the judge, prosecutor and defense counsel and jury" and is aware of what a plea bargain is . . ." Similarly to the State's expert, in regards to the medication, petitioner's expert determined that "it is highly unlikely that it [petitioner's medication] had a negative influence on his cognitive functioning."

The trial court considered the testimony of both experts and made a decision based upon observation of petitioner while in the courtroom, his responses, and the testimony of psychological

experts. Indeed, petitioner's own expert reported that petitioner understood the nature of his plea and the plea process, and that the medications petitioner was taking would not have affected his cognitive functioning. In light of these facts and considering that the trial court's determination is entitled to a "presumption of correctness" and that "[c]lear error is not demonstrated by pointing to conflicting evidence in the record," the Court should conclude that petitioner is not entitled to habeas relief on this claim. *Demosthenes v. Ball*, 495, U.S. 731, 735 (construing *Maggio* 462 U.S. at 117); *Frank*, 956 F.2d at 875.

E.     *Claim II: Inadequate Factual Basis for the Plea*

Petitioner next contends that he is entitled to an opportunity to withdraw his guilty plea to second degree murder because the record failed to show a sufficient factual basis to support his conviction. He argues that due process requires an adequate factual basis for each element of the offense must be established before the court can accept a guilty plea. Specifically, petitioner claims that because his plea was filled with "equivocal, confused, and contradictory statements," there was no factual basis shown to establish the requisite intent to satisfy the elements of second degree murder. Pet'r's Br., at 11. This claim is without merit.

"[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis support the guilty plea is not a requirement of the Constitution[.]" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). Because the writ of habeas corpus exists only to correct errors of federal law, a state court's failure to elicit a factual basis for a guilty plea does not state a claim cognizable on habeas review. See *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Coddington v. Langley*, 202 F. Supp. 2d 687, 702 (E.D. Mich. 2002) (Tarnow, J.).

Because there is no constitutional requirement that the court find a sufficient factual basis on the record for a guilty plea, it is adequate to uphold the plea on the basis that petitioner pleaded guilty to second degree murder. Further, even though not required by the Constitution, an adequate factual basis for the crime was established by petitioner's statements. According to the transcript petitioner acknowledged that he intentionally pointed the gun in the direction of the decedent and that he realized that, "by shooting him that [he] would either cause great bodily harm or death, by shooting a person with a gun that [petitioner could] kill . . . ." *See* Jury Trial Tr., dated 6/12/06, at 14-15. Although petitioner did provide equivocal statements in his plea, he admitted sufficient facts that a rational trier of fact could have inferred the intent to kill from his acknowledgments and statements. This Court should find that petitioner is not entitled to habeas relief on this claim.

*F:      Claim III: Lack of Written Plea Agreement*

Petitioner next contends that his plea was not "understanding, voluntary, and accurate" as required by MICH. CT. R. 6.302. He claims that there was "open intimidation by the court" when he plead and that there was a "disorderly discussion of [his] rights." Pet'r's Br., at 13. Further he argues that the court did not specifically state that petitioner had a right, "to be presumed innocent until proven guilty" or to have the court order his witnesses to appear at trial. *Id.* at 14. Finally, because petitioner was assessed as "borderline retarded," by one expert, he contends that there should have been both a written plea agreement and an acknowledgment of waiver to establish a voluntary and knowing relinquishment of his rights.

1.      *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v.*

*Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F. 3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange

*Id.* at 508 (footnotes omitted).

2.    *Analysis*

Petitioner first contends that his plea was coerced. But the trial transcript does not indicate any coercion. Instead, a fair reading of the transcript indicates that the trial court was surprised by petitioner's desire to take the plea. *See* Jury Trial Tr., dated 6/12/06, at 3-4. The plea hearing opened with the trial court stating its understanding that petitioner had rejected the plea deal, and that petitioner desired to go to trial. *See id* at 3. After petitioner's attorney stated his understanding that petitioner was rejecting the plea bargain, for the record, the court attempted to confirm this decision with petitioner. According to the transcript, this was the first time that petitioner's desire

to accept the plea bargain was made known to the trial court and his counsel. *See id*. at 4. In contrast to petitioner's claim that he was coerced by the court to plead guilty the transcript indicates that petitioner confirmed that no one had forced him to change his mind to enter the plea of guilty, that he was pleading guilty freely and voluntarily, and that no one had made any promises to him. *See id*. at 5-6. The transcript does not suggest that the court attempted to persuade petitioner to change his plea to guilty; rather, the court wanted to make sure that petitioner was pleading guilty of his own free will. *See id*. at 4. In fact, when the court attempted to ascertain a factual basis for the plea and petitioner began to deny his involvement, twice the court reminded petitioner that he could not plead guilty unless he was admitting his guilt. *See id*. at 11. Further, after petitioner admitted incriminating statements about firing the gun and then stated to the court, "That's what you wanted to hear, right?," the court replied "I don't want to hear anything Mr. Page." *Id*. at 12. It is evident that the trial court did not coerce a guilty plea from petitioner; instead the court attempted to assure that petitioner was aware of what he was pleading to and that the pleading was done of his own free will.

Second, petitioner contends that he was advised of his rights in a disorderly manner and that he was not advised of all of the rights that he was waiving when he entered his guilty plea. Specifically, petitioner contends that he was not advised of his right to be "presumed innocent," and his right to present witnesses at trial. When a defendant waives his right to trial and accepts a guilty plea there is no constitutional requirement that he be informed of his right to be presumed innocent or his right to present witnesses at trial. As explained by another court:

> Like the Michigan Supreme Court, this court is aware of no Supreme Court decision, and petitioner presents none, establishing a criminal defendant's federal constitutional right to be advised of the presumption of innocence before accepting

a valid guilty plea. *See, e.g.*, *United States v. Nelson*, No. 91-10084, 1991 WL 268936 (9th Cir. Dec.13, 1991) (stating that neither *Boykin* nor any other subsequent Supreme Court case requires an explanation regarding the presumption of innocence before a defendant pleads guilty); *Garrison v. Elo*, 156 F.Supp.2d 815, 826 fn. 4 (E.D.Mich.2001) (court found no precedent indicating that the failure to explicitly inform a defendant represented by counsel of the right to the presumption of innocence rendered subsequent guilty plea involuntary, "when a review of the record and the totality of the circumstances shows that the defendant was advised of the trial rights set forth in *Boykin* and that the defendant's guilty plea was in fact voluntary and intelligent"); *Chacker v. Petsock*, 713 F.Supp. 775, 778-80 (E.D.Pa.1989) (rejecting habeas petitioner's claim that state court violated state criminal procedure for failing to explicitly explain the presumption of innocence, noting that *Boykin* requires the court's colloquy "to establish that the defendant understood his right to a jury trial, the acts sufficient to constitute the offense for which he is charged, and the permissible range of sentences"). Finally, the court notes that Rule 11 of the Federal Rules of Criminal Procedure, the federal counterpart to MCR 6.302(B)(3)(c), does not require a federal judge to advise of criminal defendant of his presumption of innocence prior to accepting a guilty plea. While the Michigan state rule requires the state trial judge to advise the defendant of his right to be presumed innocent prior to accepting a guilty plea, this state procedure is in addition to the defendant's federal constitutional rights.

*Davis v. Curtis*, No. 1:02-CV-618, 2005 WL 1712212, at *6 (W.D. Mich. July 21, 2005).

Instead, the constitutional requirements for a knowing and voluntary guilty plea are that a defendant was informed of his right against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Petitioner was informed of his right not to take the witness stand and/or remain silent, his right to have the jury that had been selected hear testimony if he desired, and his right to have his lawyer cross-examine witnesses called against him. Further, the court did tell petitioner that he had a right to have "the prosecution prove you guilty beyond a reasonable doubt."[1] *See* Jury Trial Tr., dated 6/12/06, at 6.

---

[1] In *People v. Russell*, 73 Mich. App. 628, 252 N.W.2d 533 (1977), the defendant was told that: "If you go to trial, the Prosecutor must prove you guilty beyond a reasonable doubt." The court held that rather than holding that the trial judge omitted advice on the subject of the presumption of innocence, this was an "imprecise recital" of the right to be presumed innocent,

And, when pleading the court informed petitioner that if he wanted a trial "witnesses would be called, sir, those witnesses would have a chance to be cross-examined by your lawyer. *Id*. at 6. Thus, although petitioner's rights as stated by the court were not quoted exactly as they are written in Rule 6.302, petitioner was adequately informed of the constitutional rights he was waiving by pleading guilty.

Finally, noting his assessed low level of intelligence, petitioner contends that the plea agreement should have been in writing and that there should have been a written acknowledgment showing petitioner's waiver of his constitutional rights. But petitioner cites no Supreme Court precedent that requires a plea agreement to be in writing. Instead, citing *Johnson v. Zerbst*, 304 U.S. 458, (1938), petitioner states, "[w]aiver of constitutional rights may not be presumed from a silent record." Here, however, the record was not silent. As noted in the previous paragraph, petitioner was adequately informed of his right and relinquished those rights on the record. Accordingly, the Court should deny petitioner habeas relief on this claim.

## G.    *Claim IV: Failure to Grant a Ginther Hearing*

Petitioner's final claim is that because his attorney took part in the allegedly coercive plea taking, failed to object to the way the court handled the advisories it gave petitioner during the plea taking, and failed "to appreciate the fact that defendant had intellectual and mental health issues that directly related to his ability to knowingly, voluntarily and intelligently" participate in the plea taking process, the trial court erred in failing to hold an evidentiary hearing.

### 1.    *Clearly Established Law*

---

and "the advice given adequately informed the defendant of the rights he would be waiving if he gave up his right to a 'trial.'" *Id*. at 631, 252 N.W.2d at 535.

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washinton*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *See id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry is "whether there is a responsible probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. *Analysis*

Petitioner's claims in regards to the ineffective assistance of his counsel are claims that stem from his first three claims addressed previously. As analyzed under each of those claims, this Court

19

should not grant habeas relief on his claim of incompetency, inadequate factual basis for a guilty plea, and lack of a written acknowledgment of waiver and no written plea agreement. Thus, because there is no basis to grant petitioner habeas relief on these three claims which underlie his claim that his counsel provided ineffective assistance, it follows that his counsel's alleged errors were not so great as to render his assistance unreasonable and a denial of petitioner's right to the effective assistance of counsel that petitioner is guaranteed under the Sixth Amendment. Likewise, because the existing record is adequate to resolve these claims, an evidentiary hearing is not necessary. Therefore, the Court should deny petitioner habeas relief on this claim.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit*

*Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/26/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 26, 2007.

s/Eddrey Butts
Case Manager